

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

RICH MEDIA CLUB LLC,

Plaintiff,

v.

MEDIANEWS GROUP, INC.,

Defendant.

Case No.:  25cv2141 DMS (DEB)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This case comes before the Court on Defendant's motion to dismiss.  Plaintiff filed an opposition to the motion, and Defendant filed a reply.  Defendant also submitted a Notice of Subsequently Decided Authority.  After considering the parties' briefs, the relevant legal authority, and the record, the Court grants the motion for the reasons set out below.

## I.
## BACKGROUND

Plaintiff is the owner of numerous patents "related to ad viewability, monitoring, confirmation, lazy loading[1], refreshed ads[2] and other technological solutions to the

---

[1] "Lazy loading" refers to "loading ads just before a user is expected to scroll to the content that contains the ad space."  (Compl. ¶ 19.)

[2] "Ad refresh" "allow[s] for an ad space to be refreshed with a different ad based on various criteria, such as how long or how much (or both) of the ad space had been within the viewport[.]" (*Id.*)

1

placement of ads on web pages." (*Id.*)  Plaintiff alleges its "patented technology" solves the "technological challenge" of "[v]erifying whether an online ad entered a part of a web browser window that was viewable to each of many varied web browser/screen combinations[.]" (*Id.* ¶ 18.)

Five of Plaintiff's patents are at issue in this case:  U.S. Patent No. 9,824,074 ("the '074 Patent"), U.S. Patent No. 11,004,090 ("the '090 Patent"), U.S. Patent No. 11,468,453 ("the '453 Patent"), U.S. Patent No. 11,741,482 ("the '482 Patent"), and U.S. Patent No. 12,125,051 ("the '051 Patent").  The parties refer to the '074, '482, and '051 Patents as the "Lazy Loading" Patents, and the '453 and '090 Patents as the "Ad Refresh" Patents.  On the '074 Patent, the '090 Patent, the '453 Patent and the '482 Patent, Plaintiff alleges infringement of the method claims only.  For the '051 Patent, Plaintiff alleges infringement of claim 1, which recites "[a] computer program product[.]" '051 Patent at 62:64.  For the purpose of this motion, the Court finds the following claims of the Patents in Suit are representative:[3]

(1) Claim 16 of the '074 Patent, which recites:

A method comprising:

determining, by code executed by a computing system, whether a predefined area on a content page in which content is to be rendered is at least partially within a visible area of an application window on a display device by comparing coordinates of the predefined area with coordinates of the

---

[3] Plaintiff contends "it would be legal error for the Court to determine that all 98 claims are unenforceable while only considering five of them."  (Opp'n to Mot. at 13.)  However, the Federal Circuit has stated "[c]ourts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HO Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).  *See also Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 701 n.1 (Fed. Cir. 2023) ("District courts have discretion to require parties litigating Section 101 motions to identify representative claims and to articulate why (or why not) claims are representative (including by explaining how a limitation missing from a purportedly representative claim could make a material impact to the Section 101 analysis.")  Plaintiff here has not shown why the claims Defendant relies on are not representative.  Accordingly, the Court treats them as such for the purpose of this motion.

application window, the pre-defined area comprising a placeholder location on the content page in which content is to be rendered;

determining, by the code executed by the computing system, whether the predefined area on the content page in which content is to be rendered is completely outside of the visible area of the application window and is also within a distance outside of the visible area of the application window by comparing the coordinates of the predefined area with the coordinates of the application window;

transmitting, by the code executed by the computing system, one or more indications selected from the group consisting of:

an indication that the pre-defined area is at least partially within the visible area of the application window;

an indication that the pre-defined area is outside the visible area of the application window; and

an indication that the pre-defined area is within the distance outside of the visible area of the application window;

in response to determining that the pre-defined area on the content page in which content is to be rendered is at least partially within the visible area of the browser window, provide instructions to:

retrieve one or more content files; and render the one or more content files in the pre-defined area on the content page in which content is to be rendered; and

in response to determining that the pre-defined area on the content page in which content is to be rendered is completely outside of the visible area of the browser window and is also within the pre-defined distance out-side of the visible area of the browser window, provide instructions to:

retrieve the one or more content files; and render the one or more content files in the pre-defined area on the content page in which content is to be rendered.

'074 Patent, claim 16 (ECF No. 21-2 at 76-77).

(2) Claim 1 of the '482 Patent, which recites:

25cv2141 DMS (DEB)

A method for rendering advertisement content in an ad content display page, wherein the ad content display page includes (i) a predefined area configured to display advertisement content, the predefined area being a portion of the ad content display page, and (ii) page content displayed in other portions of the ad content display page, the page content being separate from the advertisement content, the ad content display page being scrollable to allow a portion of the ad content display page to appear in a visible area of a browser window of a browser that is configured to be operated by a remote computing device, the method comprising:

(a) determining whether a predefined portion of the predefined  area of the ad content display page is in the visible area of the  browser   window; and

(b) in response to a determination that the predefined portion of the predefined area of the ad content display page is in the visible area of the browser window, causing a communication to be sent from the remote computing device to one or more dispatcher servers, wherein the one or more dispatcher servers are configured to:

(i) receive the communication, and

(ii) cause advertisement content to be served to the remote computing device,

wherein the browser is configured to render the advertisement content in the predefined area of the ad content display page, and

wherein the advertisement content first appears in the predefined area of the ad content display page only after the one or more dispatcher servers serve the advertisement content to the remote computing device and the browser renders the advertisement content in the predefined area of the ad content display page.

'482 Patent, claim 1 (ECF No. 21-4 at 121.)

(3) Claim 1 of the '051 Patent, which recites:

A computer program product for rendering advertisement content in an ad content display page, wherein the ad content display page includes(i) a predefined area configured to display advertisement content, the predefined area being a portion of the ad content display page, and (ii) page

25cv2141 DMS (DEB)

content displayed in other portions of the ad content display page, the page content being separate from the advertisement content, the ad content display page being scrollable to allow a portion of the ad content display page to appear in a visible area of a browser window of a browser that is configured to be operated by a remote computing device, the computer program product comprising a non-transitory computer readable medium tangibly embodying computer-executable program instructions thereon that, when executed, cause one or more computing devices to:

(a) determine whether a predefined portion of the predefined area of the ad content display page is in the visible area of the browser window; and

(b) in response to a determination that the predefined portion of the predefined area of the ad content display page is in the visible area of the browser window, cause a communication to be sent from the remote computing device to one or more dispatcher servers, wherein the one or more dispatcher servers include computer-executable program instructions thereon that, when executed:

(i) receive the communication, and

(ii) cause advertisement content to be served to the remote computing device,

wherein the browser is configured to render the advertisement content in the predefined area of the ad content display page, and

wherein the advertisement content first appears in the predefined area of the ad content display page only after the one or more dispatcher servers serve the advertisement content to the remote computing device and the browser renders the advertisement content in the predefined area of the ad content display page.

'051 Patent (ECF No. 21-5 at 122-23.)

(4) Claim 5 of the '453 Patent, which recites:

A method comprising:

(a) in response to a determination that a predefined area of an ad content display page is within a predefined distance outside of a

visible area of a browser window of a browser configured to be operated by a remote computing device, causing a first communication to be sent to one or more dispatcher servers,

wherein the ad content display page includes (i) the predefined area configured to display advertisement content, the predefined area being a portion of the ad content display page, and (ii) page content displayed in other portions of the ad content display page, the page content being separate from the advertisement content, and

wherein the one or more dispatcher servers are configured to cause a first advertisement to be served to the remote computing device upon receipt of the first communication, wherein the browser is configured to render the first advertisement in the predefined area;

(b) determining whether the predefined area is in view within the viewable area of the browser window on the remote computing device;

(c) in response to a determination that the predefined area has been in view within the viewable area of the browser window for a predefined period of time, causing a second communication to be sent to the one or more dispatcher servers, wherein the one or more dispatcher servers are further configured to:

(i)     receive the second communication;

(ii)    cause a replacement advertisement to be selected for display on the ad content display page; and

(iii)   cause the replacement advertisement to be served to the remote computing device;

wherein the browser is further configured to render the replacement advertisement in the predefined area.

'453 Patent, Claim 5 (ECF No. 21-6 at 124-25.)

(5) Claim 23 of the '090 Patent, which recites:

A method comprising:

designating, by one or more computing systems, a first predetermined area on an ad content page;

providing that, in response to a request, the ad content page with a designation of the predefined area and associated instructions in the form of code are served to a remote computing device operating a browser and displaying a browser window;

providing that the remote computing device determines whether the predefined area is within a predefined distance outside a visible area of the browser window and that in at least partial response to such determination a first ad content is served to the remote computing device and rendered in the first predetermined area; and

wherein the instructions are configured, in conjunction with the browser to direct the computing device to:

> periodically determine whether the first predetermined area is in view within the visible area of the browser window on the remote computing device; and

> in response to determining that the first predetermined area has been in view within the visible area of the browser window for predefined time, send a communication to one or more server computing systems;

providing that the one or more server computing systems are configured to:

> receive the communication from the computing device; and in response to receiving the communication from the remote computing device, select a replacement advertisement to display on the page;

> serve the replacement advertisement to the remote computing device; and

> the method further providing that the instructions in conjunction with the browser cause that the replacement advertisement is rendered in the first predetermined area.

'090 Patent, Claim 23 (ECF No. 21-7 at 125.)

## II.

## DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint on the ground the Patents in Suit are directed to an abstract idea and are therefore not patent eligible under 35 U.S.C. § 101.

The Supreme Court has devised a two-stage framework to determine whether a claim falls outside the scope of section 101. The prescribed approach requires a court to determine (1) whether the claim is directed to a patent-ineligible concept, i.e., a law of nature, a natural phenomenon, or an abstract idea, and if so (2) whether the elements of the claim, considered "both individually and as an ordered combination," add enough to "transform the nature of the claim into a patent-eligible application."

*Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014)) (quotation marks omitted). The Supreme Court has "described step two of this analysis as a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72-72 (2012)).

Whether a claim recites "patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer*, 881 F.3d at 1368. Section 101 disputes "may be resolved on a Rule 12(b)(6) motion when there are no factual allegations that, taken as true, prevent resolving the eligibility as a matter of law." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020) (citation omitted). Step two of the *Alice* test, for example, may involve a question of fact if it involves a determination as to "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field[.]" *Berkheimer*, 881 F.3d at 1368. But "'not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Sanderling Mgmt. Ltd.*, 65 F.4th at 702 (quoting *Berkheimer*, 881 F.3d at 1368).

**A.    The "Lazy Loading" Patents**

Starting first with the "Lazy Loading" Patents, on their face, the representative claims are directed to a method or program for determining whether a predefined area is visible on a display. If the predefined area is partially visible or within a predefined

distance of the visible area, then the claims call for transmission of content to the predefined area.[4]  Defendant argues this concept is abstract for a number of reasons.

First, Defendant asserts this concept is abstract because determining the relative locations of a predefined area and a visible area "can be done by a human by simply comparing the coordinates of the two areas." (Mot. at 16.)  Plaintiff disagrees, and states the claims are "rooted in technology" and depend on "browser-window geometry."  The Court agrees with Defendant.

The Federal Circuit has stated "whether a patent's claims can be performed in the human mind or using a pencil or paper can inform whether a claim is abstract." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024) (citing *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021)).  Here, the method and program described in the claims, namely, determining whether a predefined area is visible on a larger area, and based thereon, sending content to the predefined area, could be performed in the human mind using a pencil and paper.  Plaintiff attempts to avoid this finding by asserting the claims are "rooted in technology," but grounding the concept in technology does not make the concept any less abstract.  *See GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1064 (Fed. Cir. 2026) (stating "an abstract idea remains an abstract idea even when narrowed—e.g., by subject matter—to a particular use or environment."); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet."); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) (citing

---

[4] Plaintiff takes issue with this description of the claims, arguing it is "too overgeneralized and too untethered to what the claims say[.]"  (Opp'n to Mot. at 14.)  However, Plaintiff's description of the Patents is not meaningfully different from the concept as described by Defendant and adopted by the Court. (*See id.* at 1 (stating both the "Lazy Loading" Patents and the "Ad Refresh" Patents "disclose[ ] browser-based mechanisms for determining whether a predefined area of a webpage is viewable (or about to become viewable) and, based on that viewability state, providing, refreshing, or replacing advertising content.")) Accordingly, the Court proceeds with this concept.

*Alice*, 134 S.Ct. at 2357) ("adding a computer to otherwise conventional steps does not make an invention patent-eligible."); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("As we have recently held, simply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one.")  The same goes for Plaintiff's invocation of "browser-window geometry."  *See RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Adding one abstract idea (math) to another abstract idea (encoding and decoding) does not render the claim non-abstract.")

Second, Defendant argues the "Lazy Loading" Patents are abstract because they "do not specify any particular method (much less the specific method embodied in the sample code)" for determining whether the predefined area is within the visible area of the display device.  (Mot. at 17.)  The Federal Circuit has stated that at *Alice* step one "[w]e look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery."  *Two-Way Media Ltd. v. Comcast Cable Comms., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (citing *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).  Here, Plaintiff does not identify any specific means or method for performing the functions recited in the claims.  On the contrary, the claims recite only "generic processes and machinery," such as "code executed by a computing system," '074 Patent, claim 16, and "a remote computing device."  '482 Patent, claim 1.  In other cases, the Federal Circuit has held this kind of "'result-focused functional language, containing no specificity about how the purported invention achieves those results,' to be directed to an abstract idea."  *GoTV Streaming*, 166 F.4th at 1064 (citations omitted); *see also Interval Licensing LLC v. AOL*, 896 F.3d 1335, 1343 (Fed. Cir. 2018) (stating "those latter claims failed to recite a practical way of applying an underlying idea; they instead were drafted in such a result-oriented way that they amounted to encompassing the 'principle in the

/ / /

/ / /

abstract' no matter how implemented.") That principle applies here, and supports Defendant's arguments that the "Lazy Loading" Patents are abstract.[5]

Plaintiff attempts to avoid this finding by arguing the "Lazy Loading" Patents are patent-eligible because they provide a technological solution to a technological problem. (Opp'n to Mot. at 18.) That problem appears to be "determining when unseen portions of a page become visible," (*id.* at 19), but Plaintiff fails to explain how the "Lazy Loading" Patents solve that particular problem. Instead, Plaintiff simply asserts in general, non-specific terms that the Patents require a computer, that "[o]nly a browser rendering engine" can solve the problem, and that the "solution recited is itself a browser-implemented mechanism for monitoring visibility and coordinating ad delivery in response." (*Id.* at 19-20.) The Federal Circuit has held, however, "that it is not enough … to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020). Rather, "[t]o be a patent-eligible improvement to computer functionality," the Federal Circuit requires "the claims to be directed to an improvement in the functionality of the computer or network platform itself." *Id.* Plaintiff fails to explain how the "Lazy Loading" Patents meet that standard. Absent that showing, the Court finds the "Lazy Loading" Patents are directed to an abstract idea under *Alice* step one.

"At *Alice* step two, we consider the claim elements individually and as an ordered combination to assess whether they 'transform the nature of the claim into a patent-eligible application of the abstract idea.' At this step we must ask: '[w]hat else is there in the claims before us?'" *AI Visualize, Inc. v. Nuance Comms., Inc.*, 97 F.4th 1371, 1379 (Fed. Cir. 2024) (citations omitted).

---

[5] Defendant also relies on a number of cases involving the provision of online advertising to support its argument the "Lazy Loading" Patents are abstract. Although the "Lazy Loading" Patents reference "advertising content" in the specification, the claims themselves do not. Nor do they rely on the type of "user data" at issue in those other cases, e.g., search history, user location, etc. The Court therefore agrees with Plaintiff that those cases do not directly apply here.

25cv2141 DMS (DEB)

Here, Plaintiff argues the claims "recite the ordered interaction of components, not just a result." (Opp'n to Mot. at 16.)  According to Plaintiff, those components include "requir[ing] a browser to monitor the viewability condition, initiate server-side communication based on that condition, and cause rendering of content in response." (*Id.*) However, "[t]his ordered combination of steps recites an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715.  In *Ultramercial*, that process involved "receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad[,]" all of which the Federal Circuit described as "an abstract idea, devoid of a concrete or tangible application." *Id.* That same reasoning applies to the "sequence" described in the "Lazy Loading" Patents.

Plaintiff asserts the Court should follow the court in *Rich Media Club LLC v. Duration Media LLC*, 681 F.Supp.3d 1032 (D. Ariz. 2023), and find the "Lazy Loading" Patents contain an inventive step.  In that case, the court, considering a patent related to the Patents at issue in this case, found the patent contained an inventive concept, namely "implementing a sizing technology in a process for using generic computer equipment in a novel way." *Id.* at 1042.  However, this Court is not persuaded by the reasoning of *Rich Media*.  Moreover, and more importantly, Plaintiff has not identified what the inventive concept is here, aside from the abstract idea discussed above, and thus does not satisfy *Alice* step two.  *See AI Visualize*, 97 F.4th at 1379 (quoting *Alice*, 573 U.S. at 217-18) ("To survive at *Alice* step two, a claim must recite something 'significantly more' than an abstract idea itself.")

Plaintiff's final argument on *Alice* step two is that the Court should not resolve this issue on the present motion.  "[A]t the motion to dismiss stage, 'patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6).'" *Id.* (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2018)).  However,

/ / /

25cv2141 DMS (DEB)

[c]onclusory allegations, or those "wholly divorced" from the claims or the specification, cannot defeat a motion to dismiss. And a patentee that emphasizes a claim's use of certain technology, for example, a general-purpose computer, fails at step two when the intrinsic record establishes that the technology is conventional or well-known in the art.

*Id.* (citations omitted). That is the case here.

For the reasons set out above, the Court finds the "Lazy Loading" Patents fail to satisfy *Alice* and are therefore patent-ineligible. Accordingly, Defendant's motion to dismiss is granted as to the "Lazy Loading" Patents.

**B.    The "Ad Refresh" Patents**

On the "Ad Refresh" Patents, Defendant argues they are directed to the same concept as the "Lazy Loading" Patents, with the added step of "determining how long the user's viewport has been in a location, allowing the ad to be visible and then switching the ad at a certain predefined time (i.e., ad refresh)." (Mot. at 22.) Defendant asserts that added step, like the steps of the "Lazy Loading" Patents, is "a quintessential abstract idea that has been used in advertising entirely outside the online environment." (*Id.*) The Court agrees.

Plaintiff attempts to avoid this result by raising a number of arguments, many of which are similar to those raised with respect to the "Lazy Loading" Patents. First, Plaintiff argues Defendant ignores numerous limitations that must be satisfied before an ad is refreshed. One of those limitations is "the technology at issue," but as discussed above, "[n]arrowing the abstract idea … to the Internet is an 'attempt[ ] to limit the use' of the abstract idea 'to a particular technological environment,' which is insufficient to save a claim." *Ultramercial*, 772 F.3d at 716 (quoting *Alice*, 134 S.Ct. at 2358). The same goes for the additional limitation of "the machine-driven mechanism for determining whether the ad space is in view (or about to be), which has no analogue in the non-internet world." (Opp'n to Mot. at 20.)

Next, Plaintiff argues, as it did on the "Lazy Loading" Patents, that the "Ad Refresh" Patents are "directed at solving a different, uniquely digital problem and do not simply transplant the concept of ad switching online." (Opp'n to Mot. at 20-21.) But again,

25cv2141 DMS (DEB)

Plaintiff fails to explain how the "Ad Refresh" Patents solve that alleged problem, other than reciting general and generic solutions, e.g., "browser-executed mechanisms." (*Id.* at 21.)

Plaintiff also repeats the "ordered combination" argument it raised on the "Lazy Loading" Patents, but the result here is the same as above, namely, that the ordered combination of steps merely recites an abstraction having no particular or tangible form. As the Federal Circuit stated in *GoTV Streaming*, "[t]he claim's calling for collecting and combining information for presentation to the rendering device does not provide a focus on an advance in non-abstract ideas." 166 F.4th at 1065.

Next, Plaintiff argues the claim language "narrows any purportedly abstract concept by requiring concrete implementation details and describing the mechanics by which a browser and remote systems accomplish switching ads." (Opp'n to Mot. at 23.) However, there is nothing "concrete" about the steps recited in the claims. They simply recite (1) the use of generic code to determine whether a predefined area is within a visible display, (2) having the browser compute whether the area has been in view for a predefined period of time, and (3) if so, compelling the browser to send a communication to the computing system to "'select a replacement advertisement,' serve it, and cause the browser to render it." (*Id.*) Plaintiff asserts these steps "narrow any claimed concept by embedding it within a specific technological implementation[,]" (*id.*), but "[g]iven the prevalence of the Internet, implementation of an abstract idea on the Internet … is not sufficient to provide any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Ultramercial*, 772 F.3d at 716 (quoting *Mayo*, 132 S.Ct. at 1297).

Because Plaintiff fails to raise any arguments on *Alice* step two other than the ones discussed and rejected above, the Court finds the "Ad Refresh" Patents are also patent-ineligible under section 101.

/ / /

/ / /

## IV.

## CONCLUSION

For the reasons set out above, the Court grants Defendant's motion to dismiss.  The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated:  May 22, 2026

_____

Hon. Dana M. Sabraw
United States District Judge

25cv2141 DMS (DEB)